# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

MICHAEL D. POINTS,

       *Plaintiff,*

v.                                    Civil No. 13-1210 WJ-SMV

HONEYWELL INTERNATIONAL, INC.

       *Defendant.*

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed October 16, 2014 (**Doc. 41**).   Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is GRANTED.

## BACKGROUND

This is an age and disability discrimination case filed under Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621-634 ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. ¶ 12101-12213 ("ADA"); and the New Mexico Human Rights Act, NMSA 1978, §28-1-1 et seq. ("Human Rights Act").   Plaintiff worked for Honeywell International, International, Inc. ("Honeywell" or "Defendant") as a Journeyman servicing heating and cooling units for the Roswell Independent Schools in Roswell, New Mexico. Plaintiff alleges that his employment with Honeywell was terminated in December 2009 based upon a discriminatory motive, and seeks relief including reinstatement to his position of Journeyman and compensatory damages.

## I.      Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007). Once the party moving for summary judgment properly supports its motion, it is incumbent on the non-moving party to respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its pleadings, but instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of some alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## II.     Factual Background—General Observations

In reviewing the facts presented by the parties, it becomes clear that Defendant's statement of undisputed facts ("SOF") is essentially undisputed, and Plaintiff has not presented any triable issue.  The Court comes to these conclusions through the following observations. Plaintiff's response to Defendant's SOF consists almost entirely of mere assertions that the facts are disputed, without any reference to evidence or exhibits.  In order to preclude summary judgment, Plaintiff as the nonmoving party bears the burden to "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp*., 149 F.3d 1125, 1128 (10th Cir. 1998).  Plaintiff's failure to do so leaves the facts presented by Defendant as undisputed.

Plaintiff has also presented his own SOF, but none of these creates any disputed issues. A few of these facts rely on statements by Plaintiff's wife, which the Court agrees is largely impermissible hearsay—such as Edie Points' testimony that Plaintiff told her that *he* was told he "no longer had a job."   Resp. at 4, ¶ 17; at 7, ¶¶32-33, and at 32-33.     Hearsay testimony, whether in an exhibit, affidavit or document, cannot be used to defeat a motion for summary judgment because a third party's description of a witness's supposed testimony "is not suitable grist for the summary judgment mill."   *Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1268 (10th Cir. 1998).   Other facts presented by Plaintiff are immaterial, are either not supported by any evidence, or are even contrary to the available evidence.   For example, Plaintiff's SOF 1 that the Roswell School District recommended Honeywell hire Mr. Points is immaterial.   Plaintiff's SOF 2, which states that Mr. Erivez, Mr. Points' supervisor with Honeywell, "alleges there performance issues with Mr. Points," does not qualify as an additional fact.  Moreover, Defendant's SOF 8 covers the same information more directly.  *See* Deft's SOF 8 ("Within the first three of four months of Plaintiff's employment with Honeywell, Mr. Erivez observed several equipment problems that he attributed to Plaintiff's failure to perform preventative maintenance.").

Plaintiff's SOF 5 is an example of a fact that is not supported by the evidence. Plaintiff states that Mr. Erivez "never discussed any performance concerns or complaints with Mr. Points."  In support of this fact, Plaintiff cites to his deposition testimony where he stated that Mr. Erivez never shared any concerns about his work performance.  Resp., Ex. 2 at 33:20-24. However, Plaintiff did not offer any evidence to dispute Defendant's SOF 19 which states that Mr. Erivez "met with Plaintiff to discuss his unacceptable performance and the request by the Roswell District Maintenance Manager that he be removed from his assignment at that school

district."   Further, Plaintiff himself admitted in his deposition that Mr. Erivez did meet with him to communicate concerns about his work performance and his refusal to go through proper procedure.  Ex. 2 (Pltff's Depo.) at 34:12-25; 44-45:17-5.   Because the Court is not required to consider contradictory factual allegations made in opposition to a motion for summary judgment, Plaintiff's self-serving statements may be rejected by the Court.   *See Darnell v. Target Stores*, 16 F.3d 174, 179 (7th Cir.1994) (plaintiff cannot create genuine issue of material fact to defeat summary judgment by relying on contradictory deposition testimony and affidavits by plaintiff); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) (plaintiff's opposition papers may be properly disregarded based on his inconsistent and contradictory statements).

All of Plaintiff's statement of facts belong within one of the above-described categories. Further examples are not necessary to make the point that Defendant's facts control the factual narrative because Plaintiff has not presented any material evidence or testimony to the contrary.

III.   **Factual Narrative and Chronology**[1]

Plaintiff began working for Honeywell as a unionized Journeyman on August 6, 2007. Honeywell's Field Service Leader for the Rocky Mountain District, Art Erivez, hired Plaintiff and supervised him throughout his employment.  Plaintiff was 60 years old at the time of his hire, and 63 years at the time he was terminated.   Art Erivez was 57 years old at the time he hired Plaintiff.   Plaintiff was primarily assigned to perform heating, ventilation, and air conditioning ("HVAC") services primarily in schools within the Roswell Independent School District ("the Roswell District").  Prior to beginning his employment with Honeywell, Plaintiff worked for the Roswell District for approximately 10 years performing HVAC service work.  In

---

[1]   Both parties reference their exhibits by number; therefore, the Court will reference the exhibits by the pleadings to which they are attached.  Where no docket number is cited, the exhibits referenced are from Defendant's motion. For ease of reading, the Court will avoid citing to the exhibits which support Defendant's SOF unless necessary.

July 2007, Honeywell expanded its work with the Roswell District to include mechanical maintenance work, including HVAC maintenance and repair. Because of Plaintiff's background knowledge of the Roswell District, Honeywell hired him to work as a Journeyman.  In this role as a Journeyman, Plaintiff was expected to: (1) be the primary person to troubleshoot and repair HVAC equipment at the Roswell District schools that were assigned to him; and (2) perform all routine preventative maintenance on the HVAC equipment at the Roswell District schools, which included changing the air filters on a computer generated schedule, cleaning the evaporator and/or heating coils, doing yearly inspections on the heating combustion chambers and doing any other maintenance task that the equipment may need.

A.     Plaintiff's Employment Until May 2009

Within the first three or four months of Plaintiff's employment with Honeywell, Mr. Erivez observed several equipment problems that he attributed to Plaintiff's failure to perform preventative maintenance.   Several of Plaintiff's co-workers also informed Mr. Erivez that they had witnessed Plaintiff making mistakes or failing to properly perform his duties. For example, Plaintiff's co-worker, Manuel Ortiz, observed that Plaintiff did not know how to use or fix the newer HVAC equipment installed at the Roswell District schools. As a result, Mr. Ortiz would often receive requests from the schools assigned to Plaintiff to respond to problems Plaintiff could not resolve. Ortiz. Decl., Ex. 5, ¶¶ 8-9.   After one particular issue in which Plaintiff failed to properly diagnose a defective chiller expansion valve, which resulted in excessive warming at a school, the school was reassigned from Plaintiff to Mr. Ortiz.   Another of Plaintiff's co-workers, John Besing, also alerted Mr. Erivez that Plaintiff failed to perform all of his work and that Mr. Besing would have to fix things that Plaintiff could not fix.  Besing Decl., Ex. 6, ¶ 10; Ex. 4 (Erivez Dep.) at 59-60:21-4; 74:18-20.

Following these initial issues, Mr. Erivez became aware of numerous other performance deficiencies with Plaintiff. David Eldridge was the Maintenance Manager for the Roswell District while Plaintiff was employed by Honeywell.[2]   In January 2008, Mr. Erivez received an email from Mr. Eldridge complaining that Plaintiff failed to follow proper call procedures for a specific maintenance issue and failed to return the Roswell District's equipment as requested. Mr. Eldridge noted that "[w]ith [Plaintiff] having the custodian call him directly I do not have a clue as to what is going on with the heating and cooling and we will lose control of this real fast." Ex. 1, ¶ 9; Ex. 4 at 63:13-20, 65:25-66:8, 66:19- 71:4; Ex. 7 (January 2008 email between David Eldridge and Plaintiff). Mr. Erivez met with Plaintiff to discuss his performance issues and the complaints from Mr. Eldridge. Ex. 4 at 67:10-16. However, Plaintiff's performance issues continued and Mr. Erivez received additional complaints from Mr. Eldridge. In March 2008, Mr. Erivez again met with Plaintiff to discuss several problems including Plaintiff's unacceptable treatment of a school principal, the resolution of an issue involving a kitchen air conditioning unit, and Plaintiff's failure to complete his required preventative maintenance. Ex. 4 at 78:3- 80:17; Ex. 8 (Erivez' notes). In December 2008, Mr. Erivez received yet another email from Mr. Eldridge detailing a heating problem resulting from Plaintiff's failure to perform inspections of the condensate pump and boiler at one of his assigned schools, and complaining that Plaintiff was having the schools contact him directly and "bypassing [Mr. Eldridge's] office." Ex. 4 at 86:12-98:6; Ex. 9 (Dec. 1, 2008 email string). Mr. Eldridge again complained to Mr. Erivez that: "One thing that I think we need to discuss is [Plaintiff] and his lack of communication with myself concerning the problems we are having at his schools." Ex. 9.

B.    Continuing Complaints: May 2009 to Mr. Eldridge's Request for Plaintiff's Removal

---

[2]  Mr. Eldridge was employed by the Roswell District, not Honeywell.   Ex. 4 at 63:13-20.

In May 2009, Mr. Erivez received another email from Mr. Eldridge voicing additional complaints regarding Plaintiff's job performance. Mr. Eldridge complained that Plaintiff instructed the Roswell District IT personnel how to log into the Roswell District's computerized energy management system ("EMS") to change air conditioning cycling schedules. Mr. Eldridge expressed that this could cause major cooling issues as these types of changes should only be done by Mr. Eldridge or one of his colleagues. Mr. Eldridge requested that Plaintiff be removed from working in the Roswell District:

> I would like to request that you remove [Plaintiff] from working in our district and bring in a new technician. We have had issues with him since the beginning of our contract.

Ex. 10 (May 22, 2009 email from Eldridge to Erivez); Ex. 4 at 101:2-12. Mr. Erivez met with Plaintiff to discuss his unacceptable performance and Mr. Eldridge's request that he be removed from his assignment at the Roswell District. He attempted to provide Plaintiff with advice on performing his job and keeping from making himself a target for complaints. Ex. 4 at 105:15-106:4. On July 29, 2009, Mr. Erivez received another email from Mr. Eldridge complaining about Plaintiff's failure to change the filters at a property and threatening to terminate Honeywell's contract if Plaintiff was not removed from his assignment to the Roswell District. Mr. Eldridge's email stated:

> This school is [Plaintiff's] responsibility and he has obviously not been doing his job. We pay your company way to [sic] much money to have this type of terrible service. I know we have talked about his performance before and in my opinion this is the last straw. I want him removed from this district. If you continue to employ him here I will talk with Mr. Baca and Mr. Gottlieb about discontinuing the contract. Please see that this is corrected immediately.

Ex. 1, ¶ 15; Ex. 4 at 112:20-113:12; Ex. 11 (July 29, 2009 email). As a result of the filter issue, Mr. Ortiz was forced to make an emergency stop at the school assigned to

Plaintiff.  Mr. Ortiz confirmed that the filters had not been changed for a very long time, contrary to Honeywell's policies. He reported this issue to Mr. Erivez.  Ex. 5, ¶10, Ex. 11.  Mr. Erivez took Mr. Eldridge's complaint very seriously because the Roswell District's contract was critically important to Honeywell. At that time, the contract was worth approximately $750,000 and losing the contract would have affected the jobs of many other employees. Ex. 1, ¶ 16.

C.      Facts Occurring After Mr. Eldridge's July 2009 Complaints

After receiving the July 29, 2009 complaint from Mr. Eldridge, Mr. Erivez determined that he had to remove Plaintiff from the Journeyman position with the Roswell District.  Mr. Erivez spoke to Plaintiff and informed him of Mr. Eldridge's concerns with Plaintiff's performance. Ex. 1, ¶ 18.  Plaintiff responded to Mr. Erivez by informing him, for the first time, that he had prostate cancer and required surgery.  Ex. 1, ¶ 19; Ex. 4 at  110:5-12.   Upon learning of Plaintiff's impending surgery, Mr. Erivez did not want to jeopardize Plaintiff's health insurance, and he allowed Plaintiff to continue working as a Journeyman until his surgery and allowed Plaintiff a leave of absence for his surgery and related medical treatment. Ex. 1, ¶ 20; Ex. 4 at 110:17- 111:9, 113:13-20.

Plaintiff took medical leave for approximately one week on or around July 29, 2009, and returned for a short period before going back out on leave for his surgery until December 2009.  Ex. 1, ¶20; Ex. 2 at 38:25-39:5. Honeywell never refused Plaintiff any time off that he requested for his medical condition.   Ex. 2 at 40:14-16.

In approximately November or December 2009, Mr. Erivez spoke with Plaintiff about returning to work as a Tradesman. He explained to Plaintiff that he lacked the skills to perform the Journeyman position.  As a Tradesman, Plaintiff would be responsible for

maintenance work, changing filters, and washing coils. Mr. Erivez explained that Plaintiff could not return to the Roswell District, as Mr. Eldridge had specified that he did not want Plaintiff assigned to the Roswell District.   Mr. Erivez told Plaintiff that in the Tradesman position, he would be working at the Tatum District and the Dexter District. Plaintiff told Mr. Erivez that he would have to think about returning as a Tradesman. However, Mr. Erivez never received any further contact from Plaintiff and he did not return to work. Ex. 1, ¶ 22; Ex. 4 at 133:1-10; Ex. 2 at 48:3-5.  Because Plaintiff failed to accept the Tradesman position and failed to return to work, Mr. Erivez terminated Plaintiff's employment.  Ex. 1, ¶ 23; Ex. 4 at 133:1-10.  Mr. Erivez completed a notice of termination for Plaintiff effective December 14, 2009 indicating reasons for termination as "too many customer complaints" and "not enough control knowledge" and also indicated that he "should be tradesman."   Ex. 1, 24; Ex. 1, Attachmt A (Notice of Termination).

Plaintiff had the right to appeal his termination through the union's grievance and arbitration procedure, but he did not do so.   Following Plaintiff's termination, Honeywell did not immediately replace Plaintiff's Journeyman position at the Roswell District. Other Honeywell Journeymen covered the position while Mr. Erivez searched for a qualified HVAC technician in the Roswell District area.   On December 28, 2009, over two weeks after Plaintiff's termination, Mr. Erivez hired Russell Miller as a Journeyman to service the Roswell District.   On April 11, 2011, Mr. Erivez hired Joseph Ventura as a Journeyman to service the Roswell District. Mr. Ventura was 49 years of age at the time of his hire.  At the time of Plaintiff's employment, approximately 70% of the employees supervised by Mr. Erivez were in their 40s or 50s.

D.      Plaintiff's Recent Diagnosis of Alzheimer's Disease and/or Dementia

Plaintiff was recently diagnosed with Alzheimer's disease and/or dementia, which affects his memory.   Ex. 12 (Edie Points Depo. at 15-16:25-14; Ex. Ex. 2 at 65:25-66:8. Plaintiff has no personal knowledge of any conversation between Mr. Erivez and Mr. Eldridge regarding his prostate cancer.   Ex. 2 at 72:9-21. Plaintiff informed his co-worker, Mr. Ortiz, that he had been diagnosed with prostate cancer and that he would be retiring to take care of his health issues related to his diagnosis. Ex. 5 (Ortiz Decl., ¶ 13). Plaintiff does not recall speaking with Mr. Erivez after being offered the Tradesman position.  Ex. 2 at 48:19-49:10.   Plaintiff testified that he does not know why he was terminated from Honeywell and he does not recall ever being given a reason.  Ex. 2 at 52:3-10.   Plaintiff does not recall Mr. Erivez, or anyone else from Honeywell, ever making any comments based on his age.  Ex. 2 at 53:16-20.

## DISCUSSION

Plaintiff alleges disability discrimination under the ADA, and age discrimination under both the ADEA and the Human Rights Act.

## I.      Disability Claim Under the ADA

Cases involving the ADA are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.   *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).   In order for a plaintiff to prevail on his claim of a violation of the ADA), he must establish a prima facie case of disability discrimination.   The burden then shifts to the Hospital to set forth a legitimate, nondiscriminatory reason for their actions.   The burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the Hospital's legitimate reason was a pretext for illegal discrimination.   *Id.*

A.     Prima Facie Case

To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable  accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability.  *Davidson v. AOL, Inc*., 337 F.3d 1179 (10th Cir. 2003).   Establishing a prima facie case is not onerous.  *MacDonald v. Eastern Wy. Mental Health Ctr.,* 941 F.2d 1115, 1119 (10th Cir. 1991).   However, even assuming Plaintiff meets the first two elements of a prima facie case, Plaintiff has not offered any facts which suggest that he was discriminated against because of his disability.   Plaintiff did not disclose his medical problems until after Mr. Eldridge had told Mr. Erivez that he wanted Plaintiff taken out of the Roswell District, and by that time there had been numerous complaints about Plaintiff's failure to follow procedure and his lack of knowledge in using or fixing the HVAC equipment installed in the district.   After he disclosed his disability, Plaintiff was not denied any medical leave, and continued to work in the district at his regular duties in order for him to keep his insurance.  Instead of terminating him as he was obligated to do if he wanted to keep the Honeywell contract, Mr. Erivez offered Plaintiff a Tradesman job, which Plaintiff effectively rejected by not apprising Mr. Erivez of his decision.   None of the facts in this case infer a discriminatory motive based on disability enough to make out a prima facie case, but the Court assumes here for argument's sake that Plaintiff has done so.

B.     Legitimate and Non-Discriminatory Reasons for Termination

Even if the Court were to proceed to the shifting burden analysis, it is clear that Plaintiff's disability claim still fails.   Plaintiff stated that he did not know why he was terminated.   He acknowledged that Mr. Erivez told him of concerns the district had in his

bypassing the required procedures. *See* Ex. 4 at 106:7-9 (". . . Mike wouldn't follow the protocol. He did things his way").[3] Plaintiff's failure to perform basic preventive measures, such as switching out the filters in the school would result in complaints from principals and teachers who were not getting adequate heating and cooling in the classrooms. Ex. 4 at 80:12-20. While the staff would not know whether the filters had been changed, they would know that they were uncomfortable. Ex. 4 at 80:22-25. In addition to Plaintiff's failure to perform preventive tasks, there were reports about his inability to diagnose and repair the HVAC equipment, Ex. 5, ¶ 11, and even complaints regarding oversights that could potentially be toxic to classroom occupants. Ex. 5, ¶ 9 (reporting that Plaintiff used heavy cleaner near the intake vent, which released solvents into the air supply and caused the school to evacuate). Complaints from Plaintiff's co-workers who had to perform the work that was assigned to Plaintiff in the end are well-documented and undisputed, as are the complaints which Mr. Eldridge received directly from school staff. As the Roswell District's Maintenance Manager, Mr. Eldridge could have terminated the contract with Honeywell, which would have had deleterious financial repercussions for other employees who worked for Honeywell. The Court finds that these reasons are legitimate and non-discriminatory reasons to terminate Plaintiff. *See, e.g., Lee v. Perry*, No 96-6392, 1998 WL 39254, at *2 (10th Cir. 1998) (defendant articulated a legitimate, nondiscriminatory reason for adverse employment action where the record showed that "plaintiff has been the object of several customer complaints"); *Chytka v. Wright Tree Serv., Inc.*, 925 F. Supp. 2d 1147, 1167 (D. Colo. 2013) (defendant's termination of plaintiff following the receipt

---

[3]   Mr. Erivez noted that Plaintiff would have worked directly with school district staff as a Roswell District employee, but that as an employee for Honeywell, he was expected to follow the protocol. Mr. Erivez explained that his staff was expected to perform "better work" because the school district was paying them as an outside vendor. Ex. 4 at 106:-107:10-5. There is no explanation for why Plaintiff insisted on taking service calls directly from school staff instead of going through the Honeywell system. However, in the January 2008 email, Mr. Eldridge suggested that the "extra care" Plaintiff took in the Military Heights school, and his willingness to take direct calls from the custodian there was because his children attended that school. Ex. 9.

of customer complaints was a "facially legitimate" reason for termination because "[i]nadequate job performance is a legitimate nondiscriminatory reason for an employee's termination").

C.    No Showing of Pretext

The ultimate burden of proving discrimination lies with a plaintiff. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1242 (10th Cir. 1991).    In the end, Plaintiff has the burden of showing that his termination was pretextual because it was based on his disability.    Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997).

The facts do not support a finding that Defendant's reasons for terminating Plaintiff were because of his medical problems.    Plaintiff admitted that he took time off in June and July of 2009, as well as other occasions for doctor appointments prior to his surgery.  Ex. 2 at 38-41. Honeywell never refused these leave requests.   Ex. 2 at 40:14-16.    Honeywell could have terminated Plaintiff immediately because of the serious complaints from its customer, the Roswell District, but instead of terminating Plaintiff, Mr. Erivez allowed him to stay on in order for Plaintiff to keep his insurance for his medical problems:

Q.    So, between May of 2009 and September and October, what was Mike doing?

A.    He was still doing the same thing.  What happened here was that I had a conversation with Mike Gottlieb, Joe Baca, and David [Eldridge] about Mike's condition as far as the cancer.  I told them that I could not see myself firing a man who needed the insurance so badly at that  point, because he was going to need his insurance to cover his medical costs.  I told them to just  let me keep him on until we got him past this.

Ex. 4 at 110:17-25.   In November, Mr. Erivez met with Plaintiff to tell him that Mr. Eldridge did not want him working in the Roswell District anymore, and offered Plaintiff a Tradesman position working in the Tatum District and Dexter District.[4]   Ex. 4 at 121-122.   Plaintiff also recalls this meeting:

> Q.      . . . Tell me about the conversation in November of 2009.
>
> A.      I don't remember.
>
> Q.      How do you know that you had a conversation in November of 2009?
>
> A.      Because I went to him [Erivez].  He come [sic] to town and I went to him to tell him I was ready to go back to work, and he told me that David Eldridge didn't want me to work in the school district anymore. . .

Ex. 2 at 45:4-10.   Plaintiff recalled that Mr. Erivez asked him if wanted to take a "filter job. . . to work in other schools," and that he told Mr. Erivez he would "think about it."  Ex. 2 at 48:5. Plaintiff did not remember any further conversation with Mr. Erivez after that and before his termination. Ex. 2 at 49:6-10.   Mr. Erivez similarly recalled that Plaintiff never got back to him about the position before his notice of termination was sent out on December 14, 2009.  He stated that Plaintiff did not want a Tradesman job, but his "old job" instead.  Ex. 4 at 133:3-5. When asked how he knew for sure that Plaintiff had rejected the Tradesman job, Mr. Erivez stated: "Well, if a man doesn't call me back and tell me he wants . . . he's ready to come to work, then I figure he doesn't want his job."  Ex. 4 at 133:6-10.  The only inference a reasonable fact finder can take from these facts is that Plaintiff knew he could no longer work at the Roswell District but nevertheless refused to take the job at Tradesman in order to stay employed at

---

[4]  Defendant's SOF 30 states that the meeting took place in "November or December 2009," but Plaintiff states that the meeting occurred in November.  Ex. 2 at 45:1-5.

Honeywell.   This is not discrimination based on disability; this is a plaintiff making a poor choice.[5]

Plaintiff attempts to create a factual dispute by presenting facts that are not supported by any evidence.  He claims that he "submitted" a return to work form completed by his doctor which stated that he was able to return to work full time without accommodation.   *See* Pltff's SOF 12.  However, the deposition testimony on which he relies does not say this at all:

> Q:      When were you physically able to return to work following your surgery, do you know?

> A.      I was supposed to be back to work the 12th of December, and I had a doctor's release, probably prior to a week of that.

Resp., Ex. 2 at 52:16-20.   Plaintiff did not testify—nor is there any evidence—that he "submitted" a doctor's release to anyone that he was able to return to work full-time without accommodation.   Plaintiff also claims that Mr. Erivez "did not produce any supporting documents in response to [his] request regarding his alleged performance issues," relying on his wife's deposition testimony.  *See* Pltff's SOF 18.  Ms. Points stated that her husband had shown her performance evaluations and had asked Mr. Erivez to show him what had been documented concerning his job performance.  Resp. Ex. 3 at 36:2-8.   Even if the Court could be persuaded that Ms. Points' testimony does not constitute inadmissible hearsay, this testimony does not create a triable issue.  Plaintiff admits to discussions with Mr. Erivez about bypassing protocol and Mr. Eldridge's concerns relayed by emails.  Plaintiff offers no evidence of the existence of these evaluations and the absence of such documents does not suggest pretext on the part of

---

[5]  Plaintiff offers his wife's comments that Plaintiff told her he returned to work after surgery only to find that he no longer had a job.  In addition to this testimony being inadmissible hearsay, it also fails to create a factual dispute: it is not necessarily with the undisputed fact that Plaintiff knew in November that he could not return to the Roswell District and that he had been offered a Tradesman position in another district.

Honeywell in light of the overwhelming evidence relating to Plaintiff's job performance. Concerns on the part of school staff and co-workers, as well as Mr. Eldridge, are undisputed and documented as having occurred well before Plaintiff disclosed the fact that he had cancer.   The undisputed facts do not suggest that Plaintiff was terminated because of a disability.   Because Plaintiff has not met his burden of showing evidence of pretext, Defendant is entitled to summary judgment on his disability claim.

In addition to his claim of termination based on disability, Plaintiff also alleges that his medical information was improperly disclosed.   The ADA contains a confidentiality provision for medical information and proscribes discrimination based on medical examinations and inquiries.   See 42 U.S.C. § 12112(d). To state a claim for improper release of confidential medical information under the ADA, Plaintiff must show that the disclosed information was confidential and that he suffered some kind of tangible injury as a result of the disclosure.   *See McPherson v. O'Reilly Auto*., 491 F.3d 726, 732 (8th Cir. 2007).    This claim has no merit because of one problem: Plaintiff voluntarily disclosed his medical situation to Mr. Erivez.   An employer does not violate the ADA where it discloses information voluntarily provided by an employee that is not elicited during an authorized employment-related medical examination or inquiry.   *EEOC v. C.R. England, Inc*., 644 F.3d 1028 (10th Cir. 2011) (affirming summary judgment on plaintiff's disclosure claim where plaintiff voluntarily disclosed medical information to supervisor unrelated to any examination or inquiry); *see also Cash v. Smith*, 231 F.3d 1301, 1303, 1307 (11th Cir. 2000) (ADA does not prohibit disclosure of information voluntarily provided by an employee to her supervisor and affirming summary judgment on plaintiff's claim).   Thus, the medical information relating to Plaintiff's condition was not obtained through a medical exam or inquiry (in which case there could be an ADA violation),

and thus cannot be considered confidential.  Moreover, Plaintiff also discussed his cancer and medical treatment with co-workers.  *See* Ex. 5, ¶ 13; Ex. 2 at41:20-22.   Therefore, Plaintiff's claim of an ADA violation based on improper disclosure of medical information has no merit.

## II.    Age Discrimination Claims

Plaintiff alleges age discrimination under the ADEA and the Human Rights Act.  The analysis of Plaintiff's Human Rights claim is similar to the analysis used for age discrimination claims.   *See Trujillo v. N. Rio Arriba Elec. Coop.,* 131 N.M. 607, 613 (2002) (analytical framework used in ADA claims has been applied to claims brought under the NMHRA).   A plaintiff alleging age discrimination must instead prove age was a "but for" cause of her termination.  *Simmons v. Sykes Enterprises, Inc*., 647 F.3d 943, 949 (10th Cir. 2011).[6]  The analysis uses the same three-step burden-shifting framework set out for Title VII cases.  *See Sanchez v. Denver Public Schools,* 164 F.3d 527, 531 (10th Cir. 1998), which is from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (see analysis above for Plaintiff's disability claim).

### A.    Prima Facie Claim

To establish a prima facie case of age discrimination in a termination case under the ADEA or the NMHRA, Plaintiff must show that he was: (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person.  *Adamson v. Multi Community Diversified Serv.,* 514 F.3d1136, 1146 (10th Cir. 2008).   It is undisputed that Plaintiff was within the protected class of individuals, that he was terminated from employment, and that he was replaced by a younger

---

[6]   Unlike Title VII, which has been amended to explicitly authorize discrimination claims where an improper consideration was "a motivating factor" for the adverse action, *see* 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B), the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. *Gross v. FBL Financial Services, Inc*., 557 U.S. 167, 176 (2009) (ADEA does not authorize mixed-motives age discrimination claim).

person.    Plaintiff contends that he can establish that he was doing satisfactory work with evidence that he continued to possess the objective qualifications he held when he was hired, by his own testimony that his work was satisfactory or by evidence that he held his position for a significant period of time.   *MacDonald v. E. Wyom. Mental Health Ctr.,* 941 F.2d 1115, 1121 (10th Cir. 1991); *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1421 (10th Cir. 1991) (plaintiff need only demonstrate that performance was of sufficient quality to merit continued employment).    Plaintiff points out that one of the reasons he was hired was his knowledge of the Roswell District schools, and that he was employed by the Roswell District for ten years before being hired by Honeywell.    The Court is not persuaded that the reasons Plaintiff was considered to be a desirable hire by Honeywell is also sufficient to demonstrate that Plaintiff *continued* to possess those qualifications throughout his employment.   *See, e.g., Grosdidier v. Leisure Hotels, LLC,* unpubl. opin., 2006 WL 750830 (D.Kan. 2006) (plaintiff's conclusory testimony that she was doing a good job was not sufficient to demonstrate that plaintiff continued to possess the qualifications she held when she was hired).    Plaintiff also points out that he was never reprimanded or told he was performing his job in an unsatisfactory manner.    This contention is not supported by the undisputed evidence, including Plaintiff's own deposition testimony regarding discussions he had with his supervisor.    Further, the absence of *written* reprimands does not necessarily discount discussions Plaintiff had with his supervisor about deficiencies in his job performance or concerns about his following protocol.    However, in order to proceed to the rest of the analysis, the Court will assume that Plaintiff has established a prima facie case of age discrimination.

B.      Legitimate and Non-Discriminatory Reasons for Termination

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *McDonnell Douglas Corp.,* 411 U.S. at 802–03. There has been considerable coverage of the reasons underlying Honeywell's decision to terminate Plaintiff in the Court's analysis of Plaintiff's disability claim. All of these reasons are undisputed. Plaintiff's supervisor began receiving complaints about him within months of his starting his employment. These complaints culminated in the customer's request for Plaintiff's removal, and posed a risk to Honeywell's contract with the Roswell District. Instead of being terminated from Honeywell as a result of these complaints, Plaintiff was offered a position as Tradesman in another school district. The reasons for termination relating to Plaintiff's disability claim also serve to meet Defendant's burden of production for Plaintiff's age discrimination claim.

C.    No Showing of Pretext

Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 801; *Morgan v. Hilti*, *Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

Plaintiff offers no evidence that Honeywell's reasons for terminating him were motivated by his age. Plaintiff stated that he did not know the reason for his termination. Ex. 2 at 52: 3-5. He admitted that he never heard any comments about his age by Mr. Erivez or anyone else at Honeywell. Ex. 2 at 53:16-22. Plaintiff relies solely on the fact that Honeywell hired a "younger guy" to replace him, but this allegation will not be enough to carry the day for his age discrimination claim. *See Bryson v. Renda Broadcasting, Inc.,* unpubl. opin., 2009 WL 931175 (N.D.Okla. 2009) (fact that replacement is younger is insufficient to show pretext without

evidence of a nexus between plaintiff's age and the decision to terminate employment); *Grosdidier v. Leisure Hotels, LLC.,* unpubl. opin., 2006 WL 750830 (D.Kan. 2006) (plaintiff's replacement by younger individual is sufficient for prima facie case, but plaintiff must produce evidence of pretext to rebut defendant's legitimate non-discriminatory explanation).   Moreover, it is worth noting that because Plaintiff was hired when he was 62 years old, the likelihood is that *any* person hired by Honeywell after he was terminated would be a younger individual by default.  *See Murphy v. Facet 58, Inc.,* 329 F.Supp.2d 1260, 1271 (because plaintiff was sixty-two at the time, it was "likely" that any person hired by defendant would be younger than plaintiff).

Plaintiff's claim of age discrimination becomes even weaker as one looks to Mr. Erivez, who both hired and fired Plaintiff.   Mr. Erivez is about three years younger than Plaintiff.   The Tenth Circuit recognizes the "common actor inference" or "same actor inference," which instructs that "it is highly doubtful that a person who hires an employee in the protected age group would fire the same employee as a result of a sudden 'aversion to old people.'"  *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1183 (10th Cir. 2006).  Plaintiff's termination within three years of his hiring comes within this inference, and Plaintiff offers no evidence to rebut it.[7]   In addition, the fact that Mr. Erivez is close to Plaintiff's age belies any illegal motive based on age. *See Kitchen v. The Burlington Northern and Santa Fe Rail. Co.,* 298 F.Supp.2d 1193, 1203 (D.Kan. 2004 (plaintiff faces difficult burden of establishing discrimination when the decision-maker is in the same protected class as plaintiff).

Last, it is ironic that while Honeywell hired an individual in his 30's to replace Plaintiff, that individual did not last.  Mr. Erivez hired Russell Miller weeks after Plaintiff was terminated,

---

[7]  The same-actor inference is premised on the hiring and firing occurring within a relatively short time span, and the temporal separation between the two actions varies widely, from eight days to four years.  *Antonio,* 458 F.3d at 1183, n.4.

but Mr. Miller proved to be a disappointing hire.  He was moved out to a Tradesman position within the first two or three months of his starting employment at Honeywell, and terminated from Honeywell between one and two years of employment.  Resp., Ex. 1 at 127:1-16.   Mr. Erivez then hired another individual to replace Mr. Miller, who was 49 years of age at the time of his hire.

Based on the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's age discrimination claims under the ADEA and the Human Rights Act.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff's discrimination claims based on both age and disability fail because there is no evidence to suggest that Plaintiff was terminated based on any impermissible motive.   There is an abundance of denial on Plaintiff's part, as well as mere conjecture on the part of Ms. Points, Plaintiff's wife:

> Q.      Was there anything in your mind that led you to believe that [Plaintiff's] cancer played a role, other than the timing?

> A.      No.  I would say just that it just all seemed suspicious, cancer, and his age. It just all seemed rather suspicious.

Resp., Ex. 3 at 28-29:25-6.    Mere conjecture by a plaintiff that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. *Bullington v. United Air Lines*, 186 F.3d 1301) (10th Cir.1999).

No reasonable fact finder would believe that Plaintiff was terminated because of his cancer, or because of his age.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 41**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Final Judgment shall issue separately.


_____
UNITED STATES DISTRICT JUDGE